UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KELLIE PICOU** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-3700** |
| **TERMINIX PEST CONTROL, INC.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendant Terminix Pest Control, Inc.'s Motion to Dismiss (Doc. 13). For the following reasons, the Motion is **GRANTED.**

## BACKGROUND

This case arises out of Plaintiff Kellie Picou's termination from her employment with Defendant Terminix Pest Control, Inc. In August 2021, Defendant issued a notice to all employees that they must receive the COVID-19 vaccine as an ongoing condition of employment. This notice had an exception for "a disability verified by a physician that prevents you from taking the vaccine."[1] Plaintiff told Defendant that she had "a documented heart condition, verified by a physician, which is a disability that prevented [her] from taking one of the [Emergency Use Authorization] Covid injections because she was afraid of long-term adverse effects in light of her medical disability."[2] She also alleges that she had already contracted COVID-19 twice, once within 90 days of her meeting in December 2021, making her ineligible to receive the vaccine

---

[1] Doc. 11-1 at 1.
[2] Doc. 11 at 7.

1

until the 90-day period expired.³ Plaintiff refused to receive the COVID-19 vaccination and was fired shortly thereafter.

On April 22, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging violations of the Americans with Disabilities Act ("ADA"). She received a Notice of Right to Sue Letter on August 2, 2022. Plaintiff filed suit in this Court on October 6, 2022, alleging violations of the Emergency Use Authorization Provision,⁴ the ADA,⁵ and the Louisiana Employment Discrimination Law ("LEDL").⁶

This Court granted Defendant's first Motion to Dismiss, holding that Plaintiff did not adequately plead her claims. Plaintiff subsequently filed an Amended Complaint pursuant to the Court's Order and Reasons, bringing various claims under the ADA, asserting that the Louisiana at-will employment doctrine is preempted by the Public Readiness and Emergency Preparedness Act ("PREP Act"), wrongful termination, retaliation, breach of contract, and violations of the LEDL. Now before the Court is Defendant's second Motion to Dismiss Plaintiff's Claims with Prejudice. Plaintiff opposes.⁷

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."⁸ A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged."⁹

---

³ *Id.*
⁴ 21 U.S.C. § 360bbb-3.
⁵ 42 U.S.C. § 12101.
⁶ La. Rev. Stat. § 23:301.
⁷ Doc. 16.
⁸ Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)).
⁹ *Id.*

A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[10] The Court need not, however, accept as true legal conclusions couched as factual allegations.[11]

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[12] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.[13] Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.[14]

## LAW AND ANALYSIS

Defendant argues that Plaintiff fails to establish any viable cause of action under the ADA. Plaintiff opposes, stating that she did adequately plead her ADA claims. Plaintiff also argues that the Court has original jurisdiction over her state law claims because the PREP Act preempts Louisiana's at-will employment doctrine. Alternatively, Plaintiff asserts that this Court may exercise supplemental jurisdiction over Plaintiff's state law claims. The Court will address each contention individually.

    a. *American With Disabilities Act*

Defendant argues that Plaintiff did not plausibly allege a violation of the ADA under any theory. Plaintiff asserts various claims under the ADA, namely (1) "Disability and Failure to Accommodate," (2) "Unlawful Medical Examination or Inquiry," and (3) "Regarded Disabled."[15]

---

[10] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[11] *Iqbal*, 556 U.S. at 667.
[12] *Id.*
[13] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).
[14] *Lormand*, 565 F.3d at 255–57.
[15] Doc. 11.

"The ADA prohibits an employer from 'discriminat[ing] against a qualified individual on the basis of disability,' by, among other things, terminating an individual's employment."[16] "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability."[17] The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[18] Plaintiff alleges she is disabled under subsections (A) and (C) because she has a physical impairment that substantially limits her ability to work anywhere that requires a COVID-19 vaccine, and because Defendant regarded her as having a physical impairment.

As Plaintiff's Count One "Disability and Failure to Accommodate" and Count Three "Regarded Disabled" claims both require Plaintiff to prove she has a disability as defined by the ADA, the Court will address these claims first.

         *i.    Disability and Failure to Accommodate*

In Count One, Plaintiff alleges that she "does not possess the physical ability to safely receive an [Emergency Use Authorization] Covid injection" because of her heart condition and based on her own research on the effects that the injections have on recipients' hearts.[19] Plaintiff proceeds to explain that this results in a "physical impairment that substantially limits the major

---

[16] Moss v. Harris Cnty. Constable Precinct One, 851 F.3d 413, 417 (5th Cir. 2017) (quoting Delaval v. PTech Drilling Tubulars, L.L.C., 824 F.3d 476, 479 (5th Cir. 2016) (alteration in original)).
[17] *Id.* (quoting E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688, 697 (5th Cir. 2014) (alteration in original) (quoting Zenor v. El Paso Healthcare Sys., Ltd., 176 F.3d 847, 853 (5th Cir. 1999)).
[18] 42 U.S.C. § 12102(a).
[19] Doc. 11 at 9.

life activity of 'working' in any job where the employer requires its employees to receive an [Emergency Use Authorization] Covid injection."[20] A disability as defined by the ADA as a physical impairment that substantially limits a major life activity. Major life activities include working, seeing, hearing, speaking, and breathing.[21] "Substantially limits" in the context of working as a major life activity "means [that the employee is] significantly restricted in [their] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."[22] "[T]he inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to substantial limitation of the activity of working."[23]

The Court has difficulty ascertaining Plaintiff's alleged disability. Plaintiff claims that her disability is a heart condition and then explains that she is physically unable to receive the COVID-19 vaccine due to her heart condition, which, in turn precludes her from working for any employer that requires a COVID-19 vaccination. Plaintiff alleges that her primary care physician told her not to take the vaccine; her cardiologist could not recommend any of the vaccines; and further, she conducted her own research regarding the vaccine's side effects.[24]

In its previous Order and Reasons, the Court held that the inability to receive certain medications and vaccinations is not a major life activity within the ADA.[25] Plaintiff's argument now appears to have morphed into a more attenuated chain of causation wherein her heart condition renders her unable

---

[20] Doc. 11 at 10.
[21] 42 U.S.C. § 12102(2)(A).
[22] Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 727 (5th Cir. 1995) (citing 29 C.F.R. § 1630.2(j)(3)(i)).
[23] *Id.*
[24] Doc. 11 at 9.
[25] Doc. 10 at 5.

to take certain medications and vaccines, which then prohibits her from working for any employer whose company policy requires those medications and vaccinations.

While the United States Supreme Court has held that a degenerative circulatory disorder affecting blood flow to the heart, which substantially limited a golfer's ability to walk, constituted a disability under the ADA, Plaintiff's assertion that her heart condition impacts her ability to receive a vaccine is much different.[26] Plaintiff's Amended Complaint does not explain how her heart condition directly affects her ability to work in any job, inhibits her movement, or causes her any pain.[27] The intervening event of choosing not to receive a COVID-19 vaccine is what renders Plaintiff unable to do her job, not her heart condition.[28] The Court does not find Plaintiff's workaround compelling and reiterates that it does not consider taking certain medications and vaccines a major life activity akin to seeing, hearing, speaking or

---

[26] PGA Tour, Inc. v. Martin, 532 U.S. 661, 668 (2001) ("[The employee] is also an individual with a disability as defined in the [ADA]. Since birth he has been afflicted with Klippel-Trenaunay-Weber Syndrome, a degenerative circulatory disorder that obstructs the flow of blood from his right leg back to his heart. . . . [He] could no longer walk an 18-hole golf course."). Similarly, the Fifth Circuit has required that, in the context of heart conditions, an employee alleging a disability must also show some substantial impairment to production level or ability to work. *See, e.g.*, Tanner v. Chase Inv. Servs. Corp., 600 F. App'x 914, 922 (5th Cir. 2015) (finding that an employee with a heart condition was not disabled because "his production level was about the same before and after [his heart] surgery," and he offered no evidence that he was actually disabled); Lawson v. Excel Contractors, L.L.C., No. 21-30438, 2022 WL 1793511, at *5 (5th Cir. June 2, 2022) (finding that plaintiff is not disabled under the ADA because he "offers no evidence showing that his heart condition 'substantially limits' the function of his circulatory system"); Foreman v. The Babcock & Willcox Co., 117 F.3d 800, 805–06 (5th Cir. 1997) (holding that an employee's heart condition with a pacemaker was not a disability under the ADA).
[27] Carmona v. Southwest Airlines Company, 604 F.3d 848 (5th Cir. 2010).
[28] Speaks v. Health Sys. Mgmt., Inc., No. 22-CV-77, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) ("Refusing to get a vaccine required by an employer is not itself an "impairment" of any sort. Rather, it reflects a personal choice . . . that, while hers to make in this context, cannot be considered an impairment under the ADA.").

breathing.[29] As the Court finds that Plaintiff has not adequately pleaded a disability under the ADA, the first element of a failure to accommodate claim, Plaintiff's first claim is dismissed.[30]

### ii. *Regarded Disabled*

Plaintiff's third claim alleges Defendant regarded her as disabled because (1) "she had the medical status of being unvaccinated," and (2) Defendant considered her to be "at a higher risk of becoming infected with and transmitting COVID-19."[31] Defendant moves to dismiss this claim arguing that the Amended Complaint fails to show that Defendant linked Plaintiff's refusal to receive the vaccine to a physical or mental impairment, and acted in a discriminatory manner based on that perceived impairment.[32]

To meet the standard of being a person regarded as having a disability under 29 C.F.R. § 1630.2(iii), "a plaintiff must show either that '(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity

---

[29] Plaintiff filed a Supplemental Memorandum with this Court, asking it to adopt the holding of a Pennsylvania District Court that "[m]edical conditions that prevented Plaintiffs from receiving the Covid-19 vaccine fit within [the ADA's] definition of impairment." Doc. 19 (citing Doe(s) v. Pittsburgh Reg. Transit, No. 2:22-cv-01736, 2023 WL 4867850 (W.D. Penn. July 31, 2023)). *Doe(s)* is not binding on this Court. This Court finds the facts of the disability in *Doe(s)* distinguishable and does not find its rationale otherwise persuasive. In *Doe(s)*, the court analyzed the severity of plaintiffs' anaphylaxis, finding that a "permanent, chronic, and severe allergy" can be a "physical or mental impairment" preventing plaintiffs from getting the COVID-19 vaccine. The court then concludes, as does Plaintiff, that the plaintiffs sufficiently pled their disability, without bridging the logical gap and explaining how the medical condition itself prevents Plaintiffs from the major life activity of working. *See Doe(s)*, 2023 WL 4867850, at *6 ("[T]he allegations . . . support a reasonable inference that the Plaintiffs were not able to get the Covid-9 [vaccine] because of a 'physical or mental impairment.'").
[30] Bright v. Martin, No. 22-30767, 2023 WL 4044437, at *1 (5th Cir. June 15, 2023) ("To prevail on a failure-to-accommodate claim, the plaintiff must show '(1) [he] is a "qualified individual with a disability;"(2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations.'").
[31] Doc. 12 at 17–18.
[32] Doc. 15-1 at 5–6.

7

mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.'"[33] Both of these "require that the plaintiff demonstrate that the employer actually 'entertain[ed] misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.'"[34]

The Court finds that Defendant did not regard Plaintiff as disabled by instituting a blanket vaccination policy. Defendant circulated an interoffice memo that required *all* of its employees to abide by the new vaccination policy.[35] By doing so, Defendant regarded Plaintiff, and all other employees, as being required to comply with its company policy. Various other courts have dismissed ADA discrimination suits wherein Plaintiffs alleged that their employers regarded them as disabled by enforcing COVID-19 vaccination policies.[36] One court noted that misclassifying an employee as having a

---

[33] Kemp v. Holder, 610 F.3d 231, 237 (5th Cir. 2010) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999) (overturned on other grounds).

[34] *Id.* (quoting *Sutton*, 527 U.S. at 489).

[35] *Id.*

[36] *See* Sharikov v. Philips Med. Sys. MR, Inc., No. 122-326, 2023 WL 2390360, at *8 (N.D.N.Y. Mar. 7, 2023) ("The allegation that Defendant perceived Plaintiff as *potentially* infectious fails to plausibly allege a claim that the . . . Defendant regarded Plaintiff as having an impairment); *Speaks*, 2022 WL 3448649, at *5 ("Refusing to get a vaccine required by an employer is not itself an "impairment" of any sort. Rather, it reflects a personal choice by [the plaintiff] that, while hers to make in this context, cannot be considered an impairment under the ADA"); Gallo v. Wash. Nat'ls Baseball Club, LLC, 2023 WL 2455678 (D.D.C. Mar. 10, 2023) ("The 'regarded as having' prong of the ADA's definition of disability 'does not cover [a] case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future.'"); Applegate v. St. Vincent Health, Inc., 2023 WL 3603975, at *3 (S.D. Ind. May 23, 2023) ("Plaintiffs' unvaccinated status cannot plausibly support a claim that Defendants regarded them as disabled under the ADA."); Shklyar v. Carboline Co., 616 F. Supp. 3d 920, 926 (E.D. Mo. 2022), *aff'd* 2023 WL 1487782 (8th Cir. Feb. 3, 2023); Jorgenson v. Conduent Transp. Sols., Inc., No. 22-cv-1648, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023) (dismissing a plaintiff's "regarded as" ADA claim because requiring employees to attest to their vaccination status "does not plausibly reflect a determination or belief that any of its employees are disabled or impaired"); Earl v. Good Samaritan Hosp. of Suffern, No. 20-cv-3119, 2021 WL 4462413, at *6 (S.D.N.Y. Sept. 28, 2021) (finding that the plaintiff "failed to plausibly allege that [his employer] perceived him

disability due to a failure to comply with a vaccination policy would "require inferring that [the employer] misclassified all of its . . . employees as having a disability. Such an inference is not reasonable."[37] Accordingly, Plaintiff has not plausibly alleged that Defendant regarded her as having a disability. Plaintiff's third claim that her employment was terminated because she was regarded as disabled also fails.

### iii. Unlawful Medical Examination

Plaintiff's second claim under the ADA for an unlawful medical inquiry alleges that Defendant made various unlawful medical inquiries, namely (1) inquiring into Plaintiff's vaccination status, and (2) requiring Plaintiff to submit proof she had been vaccinated. As the Fifth Circuit has held that a plaintiff "need not assert that he or she has a disability to contest an allegedly improper medical inquiry or medical examination," Plaintiff's medical inquiry claims under the ADA are not precluded by her failure to adequately plead a disability under the ADA.[38]

Under Title I of the ADA, employers cannot require medical examinations or make medical inquiries into the potential existence of an employee's disability or to the nature or severity of an employee's disability.[39] The provision that Plaintiff is suing under, 42 U.S.C. § 12112(d)(4)(A), states:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

---

to be disabled based on his potential to infect patients with COVID-19" because the "perception of infectiousness is not the same as perceived disability").
[37] *Shklyar*, 616 F. Supp. 3d at 926.
[38] Taylor v. City of Shreveport, 798 F.3d 276, 284 (5th Cir. 2015).
[39] 42 U.S.C.A. § 12112.

The ADA definition of a disability, discussed above, includes "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." To establish a claim for an unlawful medical examination or inquiry under Section 12112(d), a claimant must show (1) that their "employer obtained the medical information that was disclosed through [a medical examination] or disability-related inquiry;"[40] and (2) that she "suffered a tangible injury due to the disclosure of the protected medical information."[41]

Inquiring into whether Plaintiff was vaccinated and requiring her to submit proof that she was vaccinated do not fit this statutory definition. Defendant was not inquiring into the nature of severity of a disability or inquiring whether Plaintiff was a person with a disability. The Court notes that while the Equal Employment Opportunity Commission's ("EEOC") webpage is not binding law, it finds the EEOC's guidance instructive. The EEOC specifically stated that inquiring into COVID-19 vaccination status is not a medical inquiry under the ADA.[42] This type of conduct does not implicate any disability and is not prohibited by the ADA. Additionally, many other courts have held that inquiries into vaccination status and requiring proof of

---

[40] Franklin v. City of Slidell, 936 F. Supp. 2d 691, 711 (E.D. La. 2013) (citing Dean v. City of New Orleans, No. 11-2209, 2012 WL 2564954, at *20 (E.D. La. July 2, 2012), *aff'd*, 544 F. App'x 353 (5th Cir. 2013).
[41] *Id.* (citing *Dean*, 2012 WL 2564954, at *21).
[42] U.S. Equal Employment Opportunity Commission, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (last accessed Oct. 17, 2023, 11:42 AM), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws. The EEOC specifically stated that "[w]hen an employer asks employees whether they obtained a COVID-19 vaccination, the employer is not asking the employee a question that is likely to disclose the existence of a disability; there are many reasons an employee may not show documentation or other confirmation of vaccination besides having a disability. Therefore, requesting documentation or other confirmation of vaccination is not a disability-related inquiry under the ADA, and the ADA's rules about making such inquiries do not apply."

vaccination status are not medical inquiries under the ADA.[43] This Court agrees. Therefore, Plaintiff's medical inquiry claims under the ADA as to the inquiries into her vaccination status must be dismissed.

### b. *Preemption of Plaintiff's State Law Claims*

In her Amended Complaint, Plaintiff argues the Public Readiness and Emergency Preparedness Act (the "PREP Act") preempts the Louisiana at-will employment doctrine and gives this Court original jurisdiction over all her state law claims. Essentially, Plaintiff argues that her state law claims "arise under" federal law.[44] "The notion that state-law claims can 'arise under' federal law is not intuitive. State questions are not federal questions."[45]

There is a narrow exception to this rule, however. "[C]omplete preemption is an exception to the well-pleaded complaint rule."[46] "The 'complete preemption doctrine' provides that the preemptive force of a federal statute can be 'so extraordinary' that it 'converts an ordinary state common

---

[43] Balow v. Olmsted Med. Ctr., No. CV 22-1668 ADM/JFD, 2023 WL 2776028, at *6 (D. Minn. Apr. 4, 2023) (holding that a vaccine is not a procedure that seeks information about Plaintiffs' health and is not an inquiry into whether Plaintiffs have a disability); Bobnar v. AstraZeneca, No. 1:22-CV-02258, 2023 WL 3340466, at *4 (N.D. Ohio May 9, 2023) (holding that inquiries into an employee's vaccination status does not constitute an unlawful medical inquiry and stating that "[t]he EEOC expressly advised that an employer's COVID-19 vaccination status is not a prohibited medical inquiry under the ADA."); Friend v. AstraZeneca Pharms. LP, No. CV SAG-22-03308, 2023 WL 3390820, at *5 (D. Md. May 11, 2023) (holding that "an inquiry about vaccination status does not implicate any disability."); Bearbower v. Olmsted Med. Ctr., No. CV 22-2459 ADM/JFD, 2023 WL 2776029, at *6 (D. Minn. Apr. 4, 2023); Kehren v. Olmsted Med. Ctr., No. CV 22-1560 ADM/JFD, 2023 WL 2776094, at *6 (D. Minn. Apr. 4, 2023); Tipcke v. Olmsted Med. Ctr., No. CV 22-2470 ADM/JFD, 2023 WL 2776098, at *6 (D. Minn. Apr. 4, 2023); Aronson v. Olmsted Med. Ctr., No. CV 22-1594 ADM/JFD, 2023 WL 2776095, at *6 (D. Minn. Apr. 4, 2023) ("this requirement is not an unlawful inquiry under the ADA because inquiring about an employee's vaccination status is not likely to elicit information about a disability."); Librandi v. Alexion Pharms., Inc., No. 3:22CV1126(MPS), 2023 WL 3993741, at *9 (D. Conn. June 14, 2023).

[44] 28 U.S.C. § 1331.

[45] Manyweather v. Woodlawn Manor, Inc., 40 F.4th 237, 242 (5th Cir. 2022).

[46] Rio Grande Underwriters, Inc. v. Pitts Farms, Inc., 276 F.3d 683, 685 (5th Cir. 2001) (citing Hart v. Bayer Corp., 199 F.3d 239, 244 (5th Cir. 2000)).

law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"[47] "If a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."[48] Therefore, "[i]f a federal law is found to completely preempt a field of state law, the state-law claims in the plaintiff's complaint will be recharacterized as stating a federal cause of action."[49]

To trigger complete preemption in the Fifth Circuit, Plaintiff must show that "(1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable.'"[50]

The statute in question is the PREP Act. The Fifth Circuit has described the PREP Act as "shield[ing] covered persons, 'such as pharmacies and drug manufacturers,' from suits and liability 'during a public-health emergency.'"[51] "The PREP Act's liability shield extends only to the administration . . . or the use of those covered countermeasures," such as "vaccines and treatments."[52] "The PREP Act is, at its core, an immunity statute. It does not create a federal

---

[47] Elliot v. Care Inn of Edna LLC, No. 3:20-CV-3185-S, 2021 WL 2688600, at *3 (N.D. Tex. June 30, 2021) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 389 (1987)).
[48] *Caterpillar*, 482 U.S. at 393 (quoting Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 24 (1983)); *see also* Ben. Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003).
[49] *Rio Grande*, 276 F.3d at 685 (quoting *Hart*, 199 F.3d at 244).
[50] *Elliot*, 2021 WL 2688600, at *3 (quoting Gutierrez v. Flores, 543 F.3d 248, 252 (5th Cir. 2008)).
[51] *Manyweather*, 40 F.4th at 243 (quoting Est. of Maglioli v. All. HC Holdings, LLC, 16 F.4th 393, 400 (3d Cir. 2021)).
[52] *Id.* (quoting 42 U.S.C. § 247d-6d(a)(1))(internal quotations omitted).

12

cause of action or any rights, duties, or obligations."[53] Under different facts, the Fifth Circuit has held that the PREP Act fails to satisfy this test.[54]

As to the first element, the PREP Act does not provide a cause of action that "replaces and protects the analogous area of state law."[55] It creates a narrow cause of action for willful misconduct.[56] Plaintiff asserts claims for wrongful termination, retaliation, and breach of contract, which are not subsumed and replaced by a cause of action for willful misconduct. Nor is the compensation fund created by the PREP Act a cause of action.[57] As a result, Plaintiff is unable to identify a cause of action that replaces her asserted state law claims.[58]

---

[53] *Elliot*, 2021 WL 2688600 at *3.

[54] *Id.* ("The PREP Act does not completely preempt state law negligence claims for COVID-19-related injuries, as it fails to satisfy all three prongs of the Fifth Circuit's test for complete preemption."); *Manyweather*, 40 F.4th at 242 ("We already have decided that the PREP Act does not preempt state-law negligence claims.") Mitchell v. Advanced HCS, L.L.C., 28 F.4th 580, 586 (5th Cir. 2022) ("The Act does not completely preempt Mitchell's state-law negligence claims."). These Fifth Circuit cases address the PREP Act's preemption as it pertains to the preemption of state law negligence claims, however, the discussion of the elements of complete preemption is useful regardless.

[55] *Johnson*, 214 F.3d at 632.

[56] 42 U.S.C. § 247d-6e(d)(1) (the statute defines willful misconduct as "an act or omission that is taken-- (i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit."). Plaintiff does not appear to allege a willful misconduct claim. To the extent the Court may construe her allegations as doing so, she does not adequately plead the elements. The willful misconduct exception is procedurally narrow and requires plaintiffs to satisfy strict standards of pleading and proof, as well as showing clear and convincing evidence of "willful misconduct which caused death or serious physical injury." § 247d-6d(c)(3). Plaintiff cannot meet these strict requirements.

[57] *Manyweather*, 40 F.4th at 242 (5th Cir. 2022) (stating that even if the PREP Act's compensation fund was a cause of action, which it was not, Congress denied the courts power to review how the Secretary administers the compensation fun, which necessarily precludes complete preemption); Mitchell v. Advanced HCS, L.L.C., 28 F.4th 580, 586 (5th Cir. 2022) ("To begin, a 'compensation fund is not a cause of action.'").

[58] Mitchell v. Advanced HCS, L.L.C., 28 F.4th 580, 587 (5th Cir. 2022) ("As the Third Circuit noted, 'neither the Supreme Court nor any circuit court has extended complete preemption to a statute because it created a compensation fund.'").

Even assuming that the PREP Act does create a cause of action, the other elements are not met. The second element, that the act specifically grants federal courts jurisdiction to enforce the right, is also not met. The PREP Act specifically gives jurisdiction to Secretary of the Department of Health and Human Services to administer the compensation fund.[59] Claims for willful misconduct, when permitted, can be brought in the United States District Court for the District of Columbia after the plaintiff exhausts all administrative remedies.[60] "Thus, except for one narrow exception, PREP Act claims cannot be brought in federal court."[61] Plaintiff cannot show that the PREP Act satisfies the second prong.

Finally, there is not a clear congressional intent that the prescribed remedies be exclusive. The PREP Act does not create a general cause of action, or specifically grant federal courts jurisdiction to adjudicate such actions, evincing a lack of congressional intent that the remedies provided be exclusive. Various other courts have similarly held that the PREP Act fails to completely preempt state law, and this Court agrees.[62] As a result, the Court does not have original jurisdiction over Plaintiff's state law wrongful termination, retaliation, and breach of contract claims. This Court's jurisdiction over Plaintiff's state law claims is supplemental.

---

[59] 42 U.S.C. §§ 247d-6e(a), 247d-6e(b).
[60] *Elliot*, 2021 WL 2688600, at *4.
[61] *Id.*
[62] *Elliot*, 2021 WL 2688600, at *4 (citing *Schuster*, 493 F. Supp. 3d at 536-38; Brannon v. J. Ori, LLC, 2:21-CV-00058-JRG-RSP, 2021 WL 2339196, at *2 (E.D. Tex. June 8, 2021); Gibbs on behalf of Estate of Velasquez v. Se. SNF LLC, SA-20-CV-01333-JKP-RBF, 2021 WL 1186626, at *3 (W.D. Tex. Mar. 30, 2021); Anson v. HCP Prairie Vill. KS OpCo LLC, No. 20-CV-2346 (DDC) (JPO), 2021 WL 308156, at *9-11 (D. Kan. Jan. 29, 2021); Estate of *Smith ex rel.* Smith v. The Bristol at Tampa Bay Rehab. & Nursing Ctr., No. 20-CV-2798 (T), 2021 WL 100376, at *1-2 (M.D. Fla. Jan. 12, 2021); Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC, No. 20-CV-1198, 2020 WL 6140474, at *7-8 (W.D. Pa. Oct. 16, 2020); Saldana v. Glenhaven Healthcare LLC, No. 20-CV-5631 (FMO) (MAA), 2020 WL 6713995, at *2 (C.D. Cal. Oct. 14, 2020); Estate of Maglioli v. Andover Subacute Rehab. Ctr. I, 478 F. Supp. 3d 518, 528-33 (D.N.J. 2020)).

### c. *State Law Claims*

After addressing Plaintiff's preemption argument, the Court must now determine whether to exercise supplemental jurisdiction over the remaining state law claims as it has dismissed all other claims over which it had original jurisdiction. In her Amended Complaint, Plaintiff asserts that this Court may exercise supplemental jurisdiction over Plaintiff's retaliation, wrongful termination, breach of contract and LEDL claims.[63] Defendant does not address supplemental jurisdiction in its Motion to Dismiss.

Under 28 U.S.C. § 1367(c), district courts have discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims where the court has dismissed all claims over which it had original jurisdiction. "The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial."[64] The Fifth Circuit has advised that in determining whether to relinquish jurisdiction over pendent state law claims, a court should "look to the statutory factors set forth by 28 U.S.C. § 1367(c), and to the common law factors of judicial economy, convenience, fairness, and comity."[65] The statutory factors concern whether "(1) the claim raises a novel or complex issue of State

---

[63] Doc. 11 at 1, 21. In its previous Order and Reasons, the Court dismissed Plaintiff's retaliation claim as it could not ascertain whether she was suing under federal or state employment law. Doc. 10 ("As the Court cannot ascertain under which law the Plaintiff is suing and thus, what the requisite elements are, she did not state a claim upon which relief can be granted."). The Court granted Plaintiff leave to amend her complaint. Plaintiff failed to clarify whether she was suing under federal or state employment law. As Plaintiff grouped her retaliation claim with her other state law claims in her Amended Complaint and in her opposition to this Motion, the Court assumes that Plaintiff intended her retaliation claim to arise under state law and has treated it as such. Doc. 16 at 16 (listing and addressing wrongful termination, retaliation, and breach of contract together). To the extent Plaintiff may argue she attempted to plead retaliation under the ADA, it is dismissed for failure to plead the requisite elements of a retaliation claim under federal law.
[64] Brookshire Bros. Holding v. Dayco Products, Inc., 554 F.3d 595, 602 (5th Cir. 2009); *see also* Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1465 (5th Cir. 1995) (district court did not abuse discretion by remanding remaining state claims).
[65] Enochs v. Lampasas Cnty., 641 F.3d 155, 158–59 (5th Cir. 2011).

law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."[66]

Here, the statutory factors weigh in favor of dismissing Plaintiff's state law claims. Specifically, the second and third factors weigh heavily in favor of declining to exercise supplemental jurisdiction because only state law claims remain pending before this Court. The first factor also weighs against exercising jurisdiction as Plaintiff's claim may raise novel issues of law regarding employment rights in the face of vaccine mandates. Additionally, judicial economy, convenience, fairness, and comity all weigh in favor of declining jurisdiction as this claim has not been substantially litigated in this Court and Louisiana state courts have a significant interest in resolving issues of state law. As both the statutory and common law factors weigh against exercising supplemental jurisdiction, the Court declines to exercise supplemental jurisdiction and dismisses Plaintiff's state law claims without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion (Doc. 13) is **GRANTED**. Plaintiffs' ADA and PREP Act claims are **DISMISSED WITH PREJUDICE**. Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**.

---

[66] 28 U.S.C. § 1367(c).

New Orleans, Louisiana this 15th day of November, 2023.

 _____
 **JANE TRICHE MILAZZO**
 **UNITED STATES DISTRICT JUDGE**